13465

ROGERS v. PACIFIC MILLS

(165 S. E., 183)

*Messrs. Nelson & Mullins,* for appellant,

*Messrs. C. T. Graydon, W. M. Graydon* and *W. M. Easterling,* for respondent.

August 5, 1932.

The opinion of the Court was delivered by Mr. Justice Carter.

This action by J. C. Rogers, as plaintiff, against the defendant, Pacific Mills, was commenced in the County Court for Richland County, October 3, 1930, for the recovery of damages on account of personal injuries alleged to have been sustained by the plaintiff, August 1, 1930, while in the performance of his duties as an employee of the defendant in the Olympia Mill, a plant owned by the defendant, when he was replacing, or attempting to replace, a belt on a pulley which formed a part of the machinery of the said plant. After filing of answer by the defendant the case was tried in said Court, December 17, 1930, before Hon. M. S. Whaley, County Judge, and a jury, resulting in a verdict for the plaintiff in the sum of $500.00. From the judgment entered on said verdict the defendant appealed to this Court; the appeal resulting in a reversal of the judgment, and the case being remanded for a new trial. The opinion in the case, reported in *Rogers v. Pacific Mills,* 161 S. C., 376, 159 S. E., 655, contains a full statement of the alleged facts from the plaintiff's viewpoint, as well as a statement of the defenses interposed by the defendant, and for that reason a statement of the same herein is unnecessary. The case was tried the second time before his Honor, Judge Whaley, and a jury, September, 1931, resulting in a verdict for the plaintiff in the sum of $700.00, and from the judgment entered thereon the defendant has appealed to this Court.

Appellant presents a number of exceptions, but it is stated in appellant's brief that there are only two questions raised, which we shall consider in the order presented.

First, it is the contention of the appellant that the trial Judge "erred in refusing defendant's motion for a nonsuit and for a direction of a verdict on the ground that the testimony shows that the plaintiff assumed the risk of the injury about which he complains."

As properly conceded by counsel, the question whether the servant assumes the risk is ordinarily a question for the jury and not for the Court. It would serve no useful purpose to state the testimony in the case, but after a careful study of the record we are unable to take the case out of this rule. We cannot agree with counsel in his contention that the only reasonable inference to be drawn from the evidence leads but to one conclusion. In our opinion, the jury might have been warranted in drawing the inference from the testimony contended for by appellant's counsel, but we cannot agree with him that no other inference could be drawn therefrom. We, therefore, think that the trial Judge properly refused to grant a nonsuit or direct a verdict on the ground that the testimony showed that the plaintiff assumed the risk of the injury about which he complains.

The second question raised by the appellant is that the trial Judge "erred in refusing defendant's motion for a nonsuit and subsequent motion for direction of a verdict, made upon the ground that the only reasonable inference to be drawn from the evidence is (that) negligence of the plaintiff contributed to his own injury as a proximate cause thereof."

The same rule, stated above, that applies in assumption of risk, also applies with reference to contributory negligence; that is, ordinarily, whether the servant was guilty of contributory negligence is one for the jury and not for the Court. After a study of the record, it is our opinion that the trial Judge properly held that the question of contributory negligence in the case at bar was one for the jury.

In connection with what we have said in passing upon the issues referred to, we call attention to a portion of the testimony of the plaintiff with regard to the use of a ladder on the occasion in question. It is the contention of the appellant that the ladder referred to, being a simple tool, in using the same the plaintiff assumed any risk of injury that he might sustain during the use of the same and also that his acts

on the occasion caused his own injury or that they contributed to the injury as the proximate cause thereof and without which his injury would not have occurred. It is the contention, however, of the respondent, that the ladder used by the plaintiff on the occasion in question was caused to slip on account of grease or oil being on the shaft and that he was not responsible for the same being there and had no control over it. We quote the following testimony given by the plaintiff bearing on the questions we have discussed. After the plaintiff stated that it was his duty to replace the belt on the pulley when it came off, and stating that it came off on the occasion in question, said he had to get the ladder referred to and place the same against the shaft, and in this connection testified:

"Q. So when that belt came off, what happened to the line of shafting there, did it run on or did it cease to run? A. The machinery ceased to run. That shafting was driven by a motor and we had to stop it.

"Q. Stop what? Stop the motor, is that right? A. Yes, sir.

"Q. In order to get up to this shafting up there, what did you have to do? A. I had to get on a ladder.

"Q. Does the mill furnish you a ladder for that purpose? A. Yes, sir.

"Q. What kind of ladder is it? A. The one that I used that night was just a straight ladder that stood up against the shafting, the only thing we had to stand it against and it had no hooks and no spikes.

"Q. When you stood it up against the shafting, what did you do? A. I went up on it.

"Q. When you got up there, what did you do when you got up on it? A. I caught hold of the belt and went to pull it on the pulley and when I did that, the ladder slipped and I caught to the pulley.

"Q. What slipped? A. The ladder.

"Q. What was the condition of that shafting line with reference to grease and oil? A. There was grease on it.

"Q. What caused that grease to be on it? A. The bearings not kept in proper condition. It was worn.

"Q. The bearing was worn? A. Yes, sir.

"Q. When you speak of the bearing, is that what we call the hanger box? A. Yes, sir.

"Q. And you say the bearing was not in proper condition and it was worn? A. Yes, sir.

"Q. When the bearing is worn, what happens to the oil in the box? A. It works out each way.

"Q. You say you grabbed hold of this shafting what effect did that have·on you when you grabbed hold of it? A. It jerked me with my whole weight down as I fell. When the ladder slipped I saw that I was gone and I made a grab and caught the shaft and it jerked me down as I fell.

"Q. How far up above the floor was that? A. I suppose the overhead is about eleven feet."

In our opinion, more than one reasonable inference can be drawn from the testimony bearing on the issues raised.

The exceptions will have to be overruled, and it is the judgment of this Court that the judgment of the lower Court be affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.